UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

                              Case No. 23-cr-8-pp

    v.

KEVIN MCCAA,

        Defendant.

## ORDER GRANTING MOTION FOR DETERMINATION ON PRIVILEGE (DKT. NO. 120), FINDING RECORDED JAIL CALLS NOT PRIVILEGED AND ORDERING DEFENSE COUNSEL TO DISCLOSE TELEPHONE CALLS TO THE GOVERNMENT

On April 20, 2026, the court issued an order outlining the legal framework governing whether the attorney-client privilege attached to recordings of inmate calls between potential-witness J.B. and J.B.'s attorneys. Dkt. No. 180. That order concluded that the court needed additional information. It ordered the defendant to produce the subject recordings for *in camera* review; it ordered the government to submit an affidavit from an officer at Dodge County Detention Facility ("DCDF") concerning the facility's inmate calling policies; and it offered J.B. and/or his attorneys the opportunity to submit affidavits as to their understandings of the phone calls. Id.

The court has received the recorded phone calls (Dkt. No. 186), an affidavit from a lieutenant at Dodge County Detention Facility (Dkt. No. 185)

1

and an affidavit from J.B (Dkt. No. 189). The court did not receive affidavits from J.B.'s attorneys.

The court will grant the defendant's motion for determination on privilege. Dkt. No. 120. The court finds that the phone calls are not protected by the attorney-client privilege and it will order the defendant to disclose the phone calls to the government.

## I.   SUBMITTED MATERIALS

### A.   Affidavit of J.B. (Dkt. No. 189)

J.B. was a potential trial witness[1] and is the "client" for the purposes of determining attorney-client privilege.[2] On May 22, 2026, an affidavit from J.B. dated May 20, 2026 was filed on the docket. Dkt. No. 189 at 2. That affidavit avers that J.B. is incarcerated at the Dodge County Detention Facility. Id. at 1. J.B. avers that during the course of a different federal case (his own), he first was represented by Attorney Robert LeBell and later by Attorney Mark Rosen. J.B. attests that during his case, he made several phone calls to both of his attorneys. Id. at 2.

J.B. asserts that he "had always understood that all of these phone calls had been privileged," and that he "had thought that everything [he] had told his lawyers had been privileged." Id. He asserts that he thought this even though

---

[1] Co-defendant Kevin McCaa has pled guilty (Dkt. Nos. 202, 210) and a plea agreement has been filed on behalf of co-defendant Charles Ducksworth, Jr. (Dkt. No. 207).

[2] As the client, the attorney-client privilege belongs to J.B. Sandra T.E. v. South Berwyn School Dist. 100, 600 F.3d 612, 618 (7th Cir. 2010). His attorney(s) may assert the privilege on the client's behalf. Id. J.B.'s attorneys have asserted the privilege on his behalf. Dkt. Nos. 121, 123.

he had called his lawyers (rather than their having called him). Id. J.B. avers that he "cannot recall if the jail calls, before the calls themself, had indicated that the call was being recorded," and he concedes that "[t]his information may have been provided." Id. But he avers that "regardless of such information, [he] had always believed that these attorney calls were privileged because they had been with [his] attorney." Id. He again emphasizes that he thought this even if he was the caller, not the person being called. Id. J.B. says that "[n]o information had been ever provided that recorded phone calls with [his] attorneys were not privileged," and that he "never thought otherwise." Id. He avers that "[t]hrough [his] experience, [he] had always believed that attorney calls were privileged, even if [he] was calling [his] attorney's office on a general jail line." Id. He ends by reiterating that he had "never been informed, during a phone call or otherwise, that any such phone calls with [his] attorneys were not privileged." Id.

B.    Affidavit of Lieutenant Aaron Potratz (Dkt. No. 185)

On April 28, 2026, the government filed an affidavit from Lieutenant Aaron Potratz, a lieutenant with the Dodge County Sheriff's Office who is stationed at DCDF. Dkt. No. 185 at ¶1. Lieutenant Potratz avers that attorneys can register their phone numbers with DCDF so that attorney-client phone calls "are specifically marked not to be recorded." Id. at ¶4. He says that this is "the attorney's responsibility" and "not the inmate/client[']s]." Id. Lieutenant Potratz says that attorneys—and only attorneys—have the option to set up an "attorney call" with a client—he says that "inmates/clients" cannot schedule

3

such calls. Id. He avers that these calls take place "in a separate area of the jail from where the general jail phones are located."[3]

Lieutenant Potratz attached two documents to his affidavit. The first document is pages 30-31 of the DCDF 2025 "inmate handbook." Id. at ¶7, Dkt. No. 185-1. Lieutenant Potratz attests that this version of the handbook is "substantially the same" as the one provided to detained/incarcerated persons in 2022 and that detained/incarcerated persons are required to review and acknowledge this handbook upon their arrival at DCDF. Id. The inmate handbook tells detained/incarcerated persons that "[a]ll calls may be monitored or recorded at any time." Dkt. No. 185-1 at 1. The handbook informs detained/incarcerated persons that they can *receive* calls from their attorneys if those attorneys notify DCDF twenty-four hours in advance of the requested date/time. Id. As for calls from a detained/incarcerated person *to* an attorney, the inmate handbook advises that those calls "will not be recorded if requested by the attorney, their legal firm, or the court." Id. The handbook says that if the jail receives correspondence on official letterhead that includes the number not to be recorded, "[T]he phone system monitor will assign a 'Do No [sic] Record' status to the phone numbers." Id.

The second document attached to Lieutenant Potratz's declaration is a document from the Dodge County Sheriff's Office's Custody Procedure Manual titled "INMATE/DETAINEE TELEPHONE ACCESS" which, Lieutenant Potratz

---

[3] Lieutenant Potratz's affidavit does not say whether attorney calls are recorded by DCDF.

asserts, contains DCDF's policies and procedures for detained/incarcerated persons' phone calls. Id. Lieutenant Potratz avers that both these protocols were currently in place at the time of his affidavit and were in place at the time of the subject calls by J.B. Dkt. No. 185 at ¶6.

According to these DCDF policies, incoming calls and outgoing calls are treated differently. Incoming calls are not accepted through the jail's detained/incarcerated person designated telephone system. Dkt. No. 185-2 at 2. Instead, scheduled (and approved) incoming calls from attorneys and courts use "the Dodge County IT Dept. provided telephone system." Id. Incoming calls are not recorded. Id. at 3.

For outgoing calls, DCDF policy states that

All outgoing inmate calls will be made via the inmate telephone system.

\* \* \* \*

All outgoing inmate calls, on the designated inmate/detainee telephone system are recorded and subject to monitoring at any time to maintain the safety and security of the Dodge County Jail; exceptions are listed in Section E.

\* \* \* \*

All calls that are recorded will be preceded by a recorded message stating 'This call is recorded and subject to monitoring at any time".

Id. at 2.

Under a section titled "NON-RECORDED CALLS," DCDF policy states that "[c]alls to an attorney or member of the inmate/detainee's legal defense will not be recorded." It then explains that

5

> The responsibility falls on the attorney to contact the Dodge County Jail by official letterhead and provide the phone numbers they do not want to be recorded if the request is for the Dodge County Jail to allow outgoing calls on the inmate/detainee telephone system. The designated administrative specialist will use reasonable means to research the provided numbers and reasonably ensure they are legitimate telephone numbers for a law firm or legal defense entity. The designated administrative specialist will assign a "Do Not Record" status to the phone numbers.

Id. at 2.

### C.    Subject Telephone Calls

On April 28, 2026, the defendant provided the court with a flash drive containing the subject recordings. The flash drive contained thirty-three (33) .mp3 files, each representing a single, recorded telephone call.

The court has listened to the recordings. Each recording is an outgoing telephone call initiated by J.B. to his attorneys.[4] Each recording begins with an automated voice providing instructions. In each recording, after the call connects with the recipient, an automated voice gives the recipient an option to accept or deny the call. In each recording, immediately after the recipient accepts the call, an automated voice states: "this call will be recorded and subject to monitoring at any time." This warning is present in each of the thirty-three phone calls.

In some of the phone calls between J.B. and Attorney LeBell, Attorney LeBell warns J.B.:

---

[4] Fifteen (15) of the calls are outgoing to Attorney Robert LeBell. Eighteen (18) of the calls are outgoing to Attorney Mark Rosen.

02-03-2023 call, Attorney LeBell to J.B.: ". . . this isn't the time and place over the phone in a three-way."[5]

09-05-2023 call, Attorney LeBell to J.B.: " . . . I would prefer not to talk to you over this phone."

11-27-2023 call, Attorney LeBell to J.B.: ". . . but I don't want you talking over the phone . . . this is a recorded call."

In two of the phone calls, J.B. makes specific requests for Attorney LeBell to set up a phone call on a "private line":

09-05-2023 call, J.B. to Attorney LeBell: ". . . can . . . you call me today on the private line?"

09-29-2023 call, J.B. to Attorney LeBell: ". . . can you call me on the private line today?"

## II.    ANALYSIS

As the court's April 20 order recounted,

[t]he Seventh Circuit has not addressed whether the attorney-client privilege protects recorded calls from an inmate to his attorney," Logan [v. City of Chi.], [Case No. 24 CV 3897], 2025 WL 2590389, at *2 [(N.D. Ill. Sept. 8, 2025)] (citing Bishop v. White, No. 16 CV 6040, 2020 WL 6149567, at *8 (N.D. Ill. Oct. 20, 2020)). District courts in this circuit have found that, where institutional procedures ensure that participants know the conversations will be recorded, either the attorney-client privilege never attaches or it has been knowingly waived:

Pursley v. City of Rockford, 18 CV 50040, 2020 WL 1433827, at *5 (N.D. Ill. Mar. 24, 2020) finding the inmate-client had waived his attorney-client privilege by knowingly communicating with his attorneys on a recorded line and observing that, at this particular correctional institution, "[w]hen accepting a call, inmates are reminded each time that calls are 'subject to being monitored and recorded.'"

---

[5] There is no indication that anyone other than J.B. and Attorney LeBell were participating on this call. DCDF's inmate handbook prohibits three-way calls. Dkt. No. 185-1 at 1.

Bishop v. White, 2020 WL 6149567, at *8-9 (N.D. Ill. 2020) referring to official institution procedures found in an inmate handbook and concluding that "because [inmate-client] does not dispute that he knew the calls with his attorneys were being recorded, he has waived any claim of privilege by knowingly proceeding with those conversations on, essentially, an open and recorded line."

United States v. Tiner, Case No. 20-CR-30166-SPM-1, 2022 WL 1289353, at *1-*2 (S.D. Ill. Apr. 29, 2022) reviewing institutional policies and procedures on attorney phone calls and concluding that ". . . the attorney-client privilege does not protect [inmate-client]'s choice to speak to his attorneys on the telephone knowing that the calls were being recorded and monitored simply because it was more convenient than adhering to the process for scheduling a confidential discussion."

Logan v. City of Chicago, 2025 WL 2590389 at *2, finding that because "[inmate-client] knew he was using a recorded line to call his attorney" he "cannot establish a key element vital to his claim of privilege—that he made the calls in confidence" (citation modified) and citing the Illinois Department of Corrections website indicating that the IDOC provides notice to inmates and attorneys that calls are recorded unless arrangements are made for a private call.

Two circuit courts—the Second and the Eighth—agree with this line of reasoning. United States v. Mejia, 655 F.3d 126, 133 (2d Cir. 2011) ("[W]here an inmate is aware that his or her calls are being recorded, those calls are not protected by a privilege."); United States v. Hatcher, 323 F.3d 666, 674 (8th Cir. 2003) ("The presence of a prison recording device destroyed the attorney-client privilege. Because the inmates and their lawyers were aware that their conversations were being recorded, they could not reasonably expect that their conversations remain private.").

Dkt. No. 184 at 6-7. The court stated that it found the reasoning in these cases

persuasive; if a detained or incarcerated client chooses to speak to his attorney

on a call that the detained or incarcerated client knows to be recorded, the

detained or incarcerated client did not make the communication "in confidence." Id. at 7.

What the court needed to know was whether J.B. was aware that these calls were being recorded and whether institutional procedures advised him as much. Dkt. No. 184 at 7. The information the defense has provided shows that he was and they did.

Before any attorney-client communication occurred on any of these calls, an automated voice stated that the call would be recorded and subject to monitoring at any time. J.B.'s affidavit admits that this information "may have been provided." Dkt. No. 189 at 2. If there was doubt as to J.B.'s knowledge of the non-private nature of these calls, his conversations with his first attorney, Robert LeBell, dispel that notion. Attorney LeBell cautioned J.B. in three conversations that J.B. had called Attorney LeBell on a recorded line. And J.B. twice asked Attorney LeBell to set up calls with J.B. "on the private line." The automated warning together with J.B.'s own words mandate the conclusion that J.B. knew that his outgoing calls to his attorneys were being recorded. Under the reasoning of district courts in the Seventh Circuit and the reasoning of the Second and Eighth Circuit Courts of Appeals, that fact is dispositive.

In his affidavit, J.B. avers that he believed that the attorney-client privilege attached to his conversations regardless of whether the calls were recorded; in other words, that he believed that all conversations with his attorneys were privileged. If J.B. were a party to this case, the court might construe this statement as an argument from J.B. that his subjective

9

expectation of privacy should override any knowledge he had that his outgoing phone calls would be recorded.

But under these circumstances, that argument is contrary to both law and logic. A client's subjective expectation of privilege is not one of the eight general principles the Seventh Circuit uses to evaluate attorney client privilege:

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

United States v. Evans, 113 F.3d 1457, 1461 (7th Cir. 1997). The court did not find any cases holding that a client's subjective expectation of privilege trumped these factors. The cases support the opposite conclusion; as Evans explained, "the presence of . . . a third party defeats the privilege even though the client may harbor a desire for confidentiality because the privilege goes no further than is necessary to secure the client's subjective freedom of consultation." Id. at 1462 (emphasis added) (citation modified). And in Logan, the Northern District of Illinois rejected this expectation-of-privilege argument. There, the plaintiff argued

> that if there's an expectation of privilege—and there would have been an expectation for Plaintiff in speaking with his attorney—the privilege still applies, especially where, as here, it may be logistically difficult to schedule a call with an attorney on a private line.

Logan, 2025 WL 2590389, at *2 (citation modified). Magistrate Judge Kim found that the detained/incarcerated client plaintiff had not explained that his

10

calls were time-sensitive or that any impediment prevented the client from arranging or requesting a call on an unrecorded line. Id.

The rationale of Evans and Logan applies here. J.B.'s awareness of the presence of a recording device defeats the privilege, even if J.B. might have wished for his conversations with his attorneys to be confidential. For the privilege to apply, the communication must be made *in confidence*; here, J.B. knew that these calls were not.[6] If a client's subjective belief about privilege controlled the analysis, there would be no need to examine any other factor, and any client could establish privilege simply by asserting a belief that all conversations with his or her attorney were privileged, regardless of the circumstances. That argument does not comport with the Seventh Circuit's instructions to narrowly interpret the attorney-client privilege to avoid thwarting truth-seeking efforts. Evans, 113 F.3d at 1461.

The DCDF policies demonstrate that J.B. had at least two different ways to confidentially communicate with his attorneys. First, his attorneys could have set up incoming calls with advanced notice to DCDF; DCDF policy states that incoming calls are *not* recorded. Dkt. No. 185-2 at 3. None of the subject recordings reflect an incoming call *to* J.B.—they all are outgoing calls *from* J.B. Second, J.B.'s attorneys could have written to DCDF (on letterhead containing their phone numbers) to request that DCDF place their telephone numbers on the "Do Not Record" list. Dkt. No. 185-2 at 2. The parties have presented no

---

[6] In several of the conversations, one can hear background noise and other people talking, indicating that J.B. was not in a semi-private place when he made the calls.

evidence that J.B.'s attorneys made such requests. Neither of J.B.'s attorneys submitted an affidavit stating that they made a written request to DCDF or that DCDF made these recordings in spite of a written request for confidentiality.

J.B. repeatedly chose to communicate with his attorneys over a recorded line, despite the fact that every recording advised that the calls would be recorded and could be monitored. Those communications are not privileged.

## III. CONCLUSION

The court **GRANTS** the defendant's motion for determination of privilege. Dkt. No. 120.

The court **FINDS** that none of the thirty-three phone calls submitted by the defendant are protected by the attorney-client privilege.

The court **ORDERS** the defendant to promptly disclose the phone calls to the government.

Dated in Milwaukee, Wisconsin this 9th day of July, 2026.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

12